**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ACERA B., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-1674 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Acera B.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for child's insurance benefits and supplemental security income. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 20] is DENIED and Defendant's motion for summary judgment [dkt. 22] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

## 1. BACKGROUND

### 1.1 Procedural History

On February 29, 2016, Plaintiff filed an application for child's insurance benefits based on disability.[3] [Administrative Record ("R.") 18.] Plaintiff also filed an application for supplemental security income. *Id.* In both applications, Plaintiff alleged disability beginning April 11, 2012. *Id.* Plaintiff was born in 1997, making her 14 years 8 months old on the alleged disability onset date.

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    "Plaintiff's Opening Brief" has been construed as a motion for summary judgment by the Court.

[3]    The ALJ's opinion also notes that Plaintiff had a December 2005 application (presumably for disability benefits) which was denied, but documents related to that application do not appear in the Administrative Record. [R. 27.]

[R. 73.] Plaintiff's applications were denied initially and upon reconsideration. *Id.* Plaintiff appealed those denials and appeared at a November 28, 2018 Administrative Hearing before Administrative Law Judge ("ALJ") Lana Johnson. [R. 39-60.] On February 27, 2019, ALJ Johnson issued an unfavorable decision, concluding that Plaintiff had not established she was disabled during the period from her onset date through the date of the ALJ's decision. [R. 18-31.] Plaintiff requested Appeals Council review, which was denied on January 3, 2020. [R. 1-3.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. 20 C.F.R. §404.981. Plaintiff, through counsel, filed the instant action on March 9, 2020, seeking review of the Commissioner's decision. [Dkt. 1.]

### 1.2    Relevant Medical and Educational Background

Plaintiff has a history of speech-language difficulties, particularly as a child. [R. 384-437, 807-1207.] Plaintiff stopped receiving speech and language services in February 2004 (when she was 6 or 7 years old), at which time she was noted to have great communication skills. [R. 1039-40.] In May 2016, Plaintiff's teacher indicated Plaintiff's speech was understandable almost all of the time. [R. 391.] At Plaintiff's consultative psychological examination that same month, her speech and language functioning were normal. [R. 431.] Plaintiff's May 2016 speech and language consultative examination revealed moderate impairments with receptive language and only mild impairments with expressive language, pragmatic language, and voice. [R. 441.]

On November 12, 2012, Plaintiff was psychiatrically hospitalized for more than a month due to psychotic symptoms, particularly auditory hallucinations and paranoid thoughts. [R. 1362-63.] She was noted to be hyperverbal and delusional, with inappropriate affect and laughter and poor insight. *Id.* She was diagnosed with psychotic disorder, bipolar disorder with psychosis, and schizophrenia. [R. 1364.] She was discharged with somewhat decreased auditory hallucinations (voices present in the background), and was determined not to be a danger to herself

2

or others. [R. 1362.] It was noted she had been psychiatrically hospitalized twice in 2011, with similar symptoms, but these records do not appear in the Administrative Record before the Court. [R. 1364.] Mental status examinations by Plaintiff's healthcare providers after July 2013 were largely unremarkable. [R. 26]. In September 2018, Plaintiff "was normally oriented and her mental symptoms were described as well controlled." [R. 26, 466.] At the November 28, 2018 Administrative Hearing, Plaintiff testified her medications eliminated her auditory hallucinations since she began taking the medications in approximately 2013. [R. 25; 47-48.]

Educationally, Plaintiff graduated high school but was in special education classes. [R. 25.] Plaintiff's education records showed difficulties across all subjects, so she was maintained on IEP's throughout, which ensured numerous accommodations, including small group instruction, a calculator, extra time on assignments and tests, modified grading, and help with planning and organization. [R. 26, 350-83, 384-428, 1209-57.] Ultimately, Plaintiff's school records indicate she was "doing 'extrordinarily well' both academically and emotionally and was characterized as a 'model student' and a 'model individual.'" [R. 26.] Plaintiff was taking college classes at the time of the Administrative Hearing, where she also receives extra help in her classes, including extra time for assignments and tests. [R. 25.]

## 1.3    The ALJ's Decision

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 11, 2012. [R. 20.] At Step 2, the ALJ found that Plaintiff had the severe impairments of obesity; tachycardia; borderline intellectual functioning (BIF); schizoaffective disorder, bipolar type; and schizophrenia. *Id*. The ALJ determined that Plaintiff's hypertension was a non-severe impairment. [R. 21.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 21-24.]

Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except can understand, remember and carry out simple, routine and repetitive tasks; cannot meet fast paced hourly production goals, but can meet end of day goals; use of judgment is limited to simple work related decisions; can have occasional interaction with supervisors, coworkers and the general public; and can tolerate occasional changes to the work setting." [R. 24-29.] At Step 4, the ALJ noted Plaintiff had no past relevant work as she was 14 years old on her alleged onset date. [R. 29.] At Step 5, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. [R. 29-30.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 30.]

## 2.    SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related

activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

## 3. DISCUSSION

Plaintiff raises four issues with the ALJ's opinion: (1) that the ALJ failed to find Plaintiff disabled under Listing 12.03; (2) that the ALJ improperly rejected the opinions of Plaintiff's mental health professionals; (3) that the ALJ "undermined" Plaintiff' symptoms; and (4) that the ALJ failed to properly consider Plaintiff's obesity.

### 3.1 The ALJ Adequately Articulated her Reasoning that Plaintiff does not Meet Listing 12.03

The Social Security Disability Listings set forth the medical and functional criteria for an automatic finding of disability; if a claimant has a listed ailment and the requisite conditions, the claimant is disabled. 20 C.F.R. § 404.1525 (effective March 27, 2017). Listings were developed to easily identify extreme cases where disability is not in question. John D. Stobo, *et al.*, *Improving the Social Security Disability Decision Process*, p. 71. (National Academies Press 2007) (the Listings "were conceived as a way to quickly identify allowance cases without performing a comprehensive analysis of an individual's capacity to work."). Emphasizing the level of severity involved under the Listings, the Supreme Court has noted that the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original) (citing 20 C.F.R. § 416.925(a)). The Listings involve cases where the impairment(s) is so severe that there is no need to evaluate the limits of what a claimant can actually do; thus, if a claimant satisfies the requirements of a Listing, she is presumptively disabled and no further consideration is required. *Sullivan*, 493 U.S. at 532; 20 C.F.R. § 404.1525(a) (effective June 7, 2011, to March 26, 2017); 20 C.F.R. § 416.925(a) (effective June 7, 2011, to Mar. 26, 2017); 20 C.F.R. § 404.1525(a) (effective March 27, 2017) ; 20 C.F.R. § 416.925(a) (effective March 27, 2017). However, an impairment cannot be based only on a diagnosis; to meet the requirements of a listing, a claimant must have a medically determinable impairment(s) that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d) (effective March 27, 2017). Finally, an ALJ is not required to engage in an exhaustive analysis of the relevant listings. *See Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *see*, *also*, *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020).

At Step 3 of her analysis, the ALJ considered whether Plaintiff's symptoms met or medically equaled the criteria of Listing 12.03. Listing 12.03 (covering schizophrenic, paranoid and other psychotic disorders), is satisfied by A and B, or A and C below:

A.    Medical documentation of one or more of the following:
    1.    Delusions or hallucinations;
    2.    Disorganized thinking (speech); or
    3.    Grossly disorganized behavior or catatonia.

AND

B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1.    Understand, remember, or apply information (see 12.00E1).
    2.    Interact with others (see 12.00E2).
    3.    Concentrate, persist, or maintain pace (see 12.00E3).
    4.    Adapt or manage oneself (see 12.00E4).

OR

C.    Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
    1.    Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
    2.    Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Though the ALJ found Plaintiff suffers from schizophrenia and schizoaffective disorder [R. 20], satisfying the "Paragraph A" criteria, the ALJ found that Plaintiff did not satisfy either the "Paragraph B" or "Paragraph C" criteria of Listing 12.03.

When examining the Paragraph B criteria for Plaintiff's mental impairments, the ALJ found Plaintiff had mild limitations in understanding, remembering, or applying information, and in adapting or managing oneself. [R 22.] The ALJ also found Plaintiff had moderate limitations in interacting with others and with regard to concentrating, persisting, or maintaining pace. *Id*. In reaching these conclusions, the ALJ noted that Plaintiff lived with her mother and her sister; was able to use public transportation without difficulty; was able to get along with coworkers at her

last job; did chores at home, but said she required reminders to do so; helped her mother with meal preparation; enjoyed reading, listening to music and watching television and noted no issues remembering things she read or watched; spent time with friends outside of her home; tended to her own personal care with reminders from her mother; said that she was good at following spoken instructions; and denied any problems with getting along with others. *Id*. The ALJ also explicitly relied on the discussion of Plaintiff's mental capabilities in the rest of the decision. *Id*.; R. 27 ("Per the evidence summarized in detail above, *and in support of the B criteria* and residual functional capacity limitations…") (emphasis added).

Much like a similar Seventh Circuit case, "[t]his discussion provides the necessary detail to review the ALJ's Step 3 determination in a meaningful way." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (citation omitted) ("The ALJ's determination at Step 3 that [plaintiff's] impairments did not equal the severity of a listed impairment was limited to one paragraph… Nevertheless, as mentioned, the ALJ provided the discussion of [plaintiff's] severe and non-severe impairments, the objective medical evidence, and her credibility directly after step when he determined her RFC. This discussion provides the necessary detail to review the ALJ's Step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant."). This discussion by the ALJ is adequate evidence to allow the Court to determine that the ALJ's "Paragraph B" decision is rationally supported, particularly in light of the precedential language set forth by *Curvin*. Although the record does contain evidence of Plaintiff's mental deficits (which the ALJ mentioned), these are not so extreme in the opposite direction from the ALJ's conclusion that the Court cannot uphold the ALJ's "Paragraph B" determination based on

them.[4] This is particularly true in light of the ALJ's discussion of Plaintiff's RFC. *Curvin*, 778 F.3d at 65 (citation omitted); *Jeske*, 955 F.3d at 590 ("[W]hen an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing."). The Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Elder*, 529 F.3d at 413. The Court will not remand on the ALJ's "Paragraph B" analysis.

As to the ALJ's "Paragraph C" analysis, Plaintiff again primarily argues that the ALJ's analysis was too scant. [Dkt. 20, pp. 9-10.] Here, the ALJ properly noted that the "Paragraph C" criteria required: first, a medically documented history of the existence of the disorder over a period of at least 2 years; and, second, evidence of both 1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and 2) marginal adjustment (*i.e.*, minimal capacity to adapt to changes in environment or demands of daily life). [R 23.] The ALJ then concluded that "in this case, the record fails to document the existence of any of these criteria." [*Id.*] While the ALJ could have been more thorough in her analysis in this paragraph in particular, the basis for her decision is clear when her decision is read as a whole. In her decision, the ALJ relied on the opinions of the psychological consultative examiner, who found that Plaintiff would likely be able to "adjust[] to changing expectations of many work environments," [R. 27] indicating evidence of a better-than-marginal adjustment ability. Accordingly, the ALJ found that

---

[4]     The ALJ explicitly acknowledged the following mental deficits: Plaintiff graduated high school but was in special education classes [R. 25]; Plaintiff's education records show difficulties across all subjects [R. 26]; Plaintiff was taking college classes at the time of the Administrative Hearing, and she receives extra help in her classes including extra time for assignments and tests [R. 25]; Plaintiff's May 2016 speech and language consultative examination revealed moderate impairments with receptive language, and mild impairments with expressive language, pragmatic language, and voice. [*Id.*]; and Plaintiff had no problems to only slight problems with attending and completing tasks, with obvious problems only with carrying out multistep instructions [R. 28]. The ALJ also addressed Plaintiff's mental health treaters' opinions concerning off-task tolerance and the evidence that contradicted them [R. 27] (discussed by the Court separately in Section 3.2(b), *infra*).

9

Plaintiff failed to satisfy the "Paragraph C-2" criteria. [R. 23, 27.] Even if the ALJ's analysis leaves something to be desired related to "Paragraph C-1,"[5] the Court is loath to overturn the ALJ's "Paragraph C-2" finding that Plaintiff has sufficient capacity to adapt to changes in her environment or to demands that are not already part of her daily life. Thus, the Court will not remand on the ALJ's "Paragraph C" analysis.

Finally, it is important to note that Plaintiff bears the burden of proving her "impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2005); *see also* 20 C.F.R. § 404.1525(d). To support reversal, "a claimant is required to identify the medical evidence showing that he or she would have satisfied the Step 3 criteria if the ALJ had considered the relevant issues." *Heuschmidt v. Colvin*, 2015 WL 7710368, at *3 (N.D. Ill. Nov. 30, 2015). Plaintiff has not done so here; Plaintiff has not demonstrated her limitations are so extreme as to qualify for presumptive disability under Listing 12.03. The Court cannot remand on this basis.

### 3.2 Substantial Evidence Supports the ALJ's Rejection of Certain Opinion Evidence

Plaintiff next complains the ALJ improperly rejected the opinions of Plaintiff's mental health professionals and the State-Agency consultants. The Court disagrees, as detailed below.

#### 3.2(a) Teacher Questionnaire

The Court first addresses the "Teacher Questionnaire" [R. 387-94], which the ALJ gave no

---

[5] Plaintiff does not argue she met the initial qualification of a medically documented disorder for at least 2 years [*see* dkt. 20, pp. 9-10], nor does the ALJ list an initial diagnosis date for Plaintiff's mental disorders. The Court will not make this argument for Plaintiff. *See Herrman v. Astrue*, 2010 WL 356233, at *12 (N.D. Ill. Feb. 1, 2010) (Judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig.") (citing *Northwestern Nat. Insurance Co. v. Baltes*, 15 F.3d 660, 662-663 (7th Cir. 1994)); *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."). Additionally, the items Plaintiff mentions that seemingly satisfy "Paragraph C-1" (*i.e.*, hospitalization, mental therapy, and school accommodations) were all discussed by the ALJ. [R. 25-27.] Nonetheless, if Plaintiff cannot meet the documented disorder criteria (Plaintiff presents no argument or evidence she has) *and both* Paragraph C-1 and C-2, she has not met Listing 12.03C.

weight because "the source of the opinions is not identified nor is the form signed by the provider of the opinions." [R. 28.] It is plain there are problems with this form: it is filled out in the handwriting of two different individuals, yet signed by only one. [R. 387-94.] The majority of the opinions have been provided by a teacher who taught Plaintiff Independent Living Skills and English [*see* R. 387-92 at 387], yet the later medical opinions were provided in different handwriting by the school nurse who ultimately signed off on the form [*see* R. 393-94]. This may be a design flaw of the form, but nonetheless it leaves unidentified the identity of the individual who provided the majority of the opinions therein. And ALJ is free to disregard an unsigned opinion with dubious attribution, which she has done here. *See Terry v. Astrue*, 580 F.3d 471, 476-77 (7th Cir. 2009) (*citing* 20 C.F.R. § 404.1519o, signature requirements on reports) ("An unsigned medical evaluation cannot be the kind of substantial evidence we would need to uphold the ALJ's RFC determination…"). The Court finds no error in the ALJ's disregard of this document. Moreover, the fact the ALJ gave no weight to this document is of little moment as the ALJ detailed how several portions of the teacher's report were "pretty well in line with the available evidence" [R. 28] and, indeed, the Court finds them not out of line with the ALJ's RFC determination.

### 3.2(b)    Plaintiff's Mental Health Treaters

Plaintiff also argues the ALJ improperly assigned little weight to two of Plaintiff's mental health treaters. Plaintiff's entire argument in this regard consists of two sentences:

> Ignoring the SSA policy of deference to treating doctors, as well as the requirement that she build a logical bridge, the ALJ assigned little weight to a treating group therapist and a treating psychiatric advanced practice nurse because, "despite specialty and treatment relationship," they overstated Plaintiff's limitations and their opinions are not consistent with the medical evidence "described above"….As with the rest of the decision, the ALJ provided no insight into the basis for her assessments.

[Dkt. 20, p. 11.] Plaintiff has provided no insight into the supposed basis to remand the ALJ's

decision. Plaintiff does not even identify the treaters by name or cite to the Administrative Record once in this section of her brief. However, it appears Plaintiff takes issue with the ALJ's treatment of the opinions of Ms. Robin Mathew and Ms. Michele Birkey, both of whom opined Plaintiff had work-preclusive limitations (*i.e.*, she'd be off-task for more than 30% of the workday and be absent more than 6 days per month) due to her limitations in understanding, memory, concentration, social interaction, and adaptation. [R. 27-28.]

In her opinion, the ALJ noted much medical evidence that was inconsistent with these extreme limitations: Plaintiff herself "said that she is good at following spoken instructions" [R. 23]; "[Plaintiff] stated that her mental impairments are managed with therapy and medication" [R. 25]; Plaintiff "stopped receiving speech and language services in February 2004, at which time she was noted to have great communication skills" [*Id.*]; mental status examinations by Plaintiff's healthcare providers after July 2013 continued to be mostly unremarkable [R. 26]; at the May 2016 psychological consultative examination, Plaintiff did not appear to be distracted by internal stimuli [*Id.*]; September 2018 records show Plaintiff "was normally oriented and her mental symptoms were described as well controlled" [*Id.*]; and Plaintiff's school records indicate she was "doing 'extrordinarily well' both academically and emotionally and was characterized as a 'model student' and a 'model individual.'" [*Id.*]. The Court finds these citations "minimally articulate" the ALJ's reasons for discounting Ms. Matthew and Ms. Birkey's opinions because "they greatly overstate [Plaintiff's] limitations and are not consistent with the available medical evidence summarized above." [R. 28.] *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (in weighing a treating physician's opinion, an ALJ "need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor.") (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

Ultimately, while the ALJ must provide "good reasons" for how much weight he gives to

a treating source's medical opinion, the Seventh Circuit upholds "all but the most patently erroneous reasons for discounting a treating physician's assessment," which is "a very deferential standard." *Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2); *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Elder*, 529 F.3d at 415. The Court finds the reasons detailed above are good reasons supported by the record for discounting the opinions of Plaintiff's treaters, and Plaintiff has not demonstrated that the ALJ's rationale was patently erroneous. Because the Court finds no error with the ALJ's assessment of these opinions, the Court will not remand on this basis.

### 3.2(c)    State-Agency Examining Consultants

Next, Plaintiff takes issue with the weight the ALJ gave the opinions of the examining consultants. [Dkt. 20, p. 11.]

The ALJ noted that the psychological consultative examiner, Kenneth Heinrichs, Psy.D., opined Plaintiff was able to manage her own benefits so long as she is compliant with her psychotropic medication and with the support and guidance of her mother. [R. 27.] The ALJ also detailed Dr. Heinrichs's opinion that Plaintiff's ability to engage in some work activity without close supervision may be limited. *Id*. The ALJ also listed how Dr. Heinrichs found Plaintiff had little problems with understanding, persistence, social interaction, or adjusting to changing expectations of many work environments. *Id*. The ALJ gave these opinions partial weight because they were somewhat consistent with the available medical evidence and were supported by the examiner's specialty and examining relationship with Plaintiff. *Id*. The ALJ likewise gave partial weight to speech and language consultative examiner, Risé McElhenney, M.A., CCC-SLP, who opined that Plaintiff might misunderstand comments or remarks and had difficulty with problem-solving and reasoning. *Id*. The ALJ concluded that these opinions were somewhat consistent with the available medical evidence and were supported by the examiner's specialty and examining

relationship with Plaintiff. *Id*.

Plaintiff argues that it is "unclear which 'parts' of the consultants' opinions were entitled to partial weight" and that "it is unclear what 'somewhat consistent' means, and why an examining relationship commands more deference than a treating relationship." [Dkt. 20, p. 11.] However, an ALJ is not required to comment on every line of an opinion – "it is enough to recognize and respond to the physician's principal conclusions, which the ALJ did." *Kolar v. Berryhill*, 695 F. App'x 161 at 161-62 (7th Cir. 2017); *see, also, Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Moreover, the RFC itself demonstrates how these opinions impacted the ALJ's analysis: for instance, Dr. Heinrichs noted plaintiff would likely be able to adjust to changing expectations of many work environments, and the ALJ restricted Plaintiff to routine and repetitive tasks but with occasional changes to the work setting. [R. 24, 27.] The Court agrees with the Commissioner that the ALJ gave weight to Dr. Heinrichs's note on changing expectations of work environments in that she restricted Plaintiff to tasks that do not change, (*i.e.*, routine and repetitive), but, like Dr. Heinrichs, the ALJ was not convinced that Plaintiff could handle no changes whatsoever, and thus allowed for occasional changes to the work setting. [*see* dkt. 23, p. 12.] The Court finds the ALJ recognized and responded to the treating physicians' principal conclusions. *Kolar*, 695 F. App'x at 161-62. Moreover, when the ALJ's opinion is read as a whole, the Court does not find it unclear which parts of the examining consultants' opinions were given some weight.

As to why Dr. Heinrichs and Ms. McElhenney were given more deference than Ms. Mathew and Ms. Birkey, the Court has already addressed the ALJ's findings that Ms. Mathew's and Ms. Birkey's opinions were not supported by the record, Section 3.1(b), *supra*.

The Court will not remand this matter based on the ALJ's treatment of the opinions of the examining consultants.

### 3.2(d)    Non-Examining State-Agency Psychological Consultants

As to the opinions of the non-examining consultants, Plaintiff argues that "[i]n essence, [the ALJ] rendered the absence of a treating relationship irrelevant by noting that [the non-examining consultants] have programmatic knowledge, as if that is somehow equivalent." [Dkt. 20, p. 11.]

First, it is entirely reasonable to credit the state-agency doctors for their programmatic knowledge. *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.927(f)(2)(1) (effective August 1, 1991 to August 1, 2006)). However, while the ALJ did make note of the state-agency consultants' programmatic knowledge, nowhere does the ALJ say that such knowledge is equivalent to a treating relationship. Nor does the Court believe the ALJ implied this. In fact, the ALJ merely noted that the consultants' opinions were "supported by the consultants' specialties and programmatic knowledge." [R. 28.] Moreover, Plaintiff's argument ignores the fact the ALJ also gave weight to state-agency consultants' opinions because they were consistent with the medical evidence. *Id*. (The ALJ even noted she could not give these opinions greater weight because the moderate limitations contained therein were not defined or given in functional terms.) *Id*. Again, that an opinion is supported by the record is a valid reason to give it weight. 20 C.F.R. § 404.1527(c)(4) (effective August 24, 2012 to March 26, 2017 for all claims filed prior March 27, 2017); see also 20 C.F.R. § 404.1520c (effective March 27, 2017). Thus, the Court finds no error here with respect to the ALJ's reference to the non-examining consultants' programmatic knowledge, and the Court will not remand on this basis.

### 3.3    The ALJ Appropriately Assessed Plaintiff's Symptoms

Next, Plaintiff details several ways the ALJ allegedly "improperly undermined Plaintiff's disabling symptoms." [Dkt. 20, p. 12.]  In sum, it appears to the Court that Plaintiff complains about the ALJ's weighing of the evidence, but again, it not the Court's role to reweigh the evidence.

*Elder*, 529 F.3d at 413. The Court addresses each of Plaintiff's concerns, below.

First, Plaintiff complains that the ALJ listed Plaintiff's mental impairments at the end of her list of severe impairments. The Court finds this argument to be irrelevant. Disorders are not listed according to their level of severity; a disorder is severe or it is not. The ALJ found Plaintiff's schizoaffective disorder and schizophrenia to be severe impairments, each entitled to the same consideration by the ALJ as all Plaintiff's other severe impairments when determining their impact on Plaintiff's functioning. Nothing in the ALJ's opinion indicates to the Court the ALJ gave more consideration to the impairments listed before Plaintiff's mental impairments. The Court wholeheartedly disagrees that the ALJ "buried" these two mental disorders at the end of a six-item list (in bold font). [R. 20.] The Court will not remand on this basis.

Next, Plaintiff accuses the ALJ of impermissible cherry-picking with respect to Plaintiff's symptoms to suggest they were overblown. Plaintiff faults the ALJ for not putting greater emphasis on records showing that she had, at times, depressed mood, irritability, or racing thoughts, among other conditions. [Dkt. 20, p. 13.] However, an ALJ is not required to address every entry in the record. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence" (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The ALJ was free to find more persuasive records showing Plaintiff's conditions were controlled, that she was stable, and that her conditions had improved, which the ALJ did here. [R. 26.] The Court does not find the ALJ presented an inaccurate picture of Plaintiff's mental status.

As part of her cherry-picking argument, Plaintiff also faults the ALJ for her description of the psychological consultative examination where the ALJ "did not mention, until later," that the examiner found Plaintiff had problems in some areas. [Dkt. 20, p. 13.] Again, "[w]e do not discount [an ALJ's discussion of the evidence] simply because it appears elsewhere in the decision. To

require the ALJ to repeat such a discussion throughout his decision would be redundant." *Curvin*, 778 F.3d at 650; *Rice v. Barnhart*, 384 F.3d 363, n. 5 (7th Cir. 2004) (as courts read ALJ decisions as a whole, it would be a "needless formality" to require ALJs to repeat redundant discussions of evidence that appear elsewhere in the decision). The Court finds the ALJ discussed Plaintiff's problem areas and did not improperly minimize them in favor of evidence demonstrating greater capabilities. In short, the Court does not find the ALJ engaged in impermissible cherry-picking of Plaintiff's symptoms.

Plaintiff also faults the ALJ for including in her analysis reports of improvement in Plaintiff's mental health symptoms. In this regard, the ALJ noted that Plaintiff testified her medication eliminated her auditory hallucinations. [R. 25.] This was corroborated by medical records (also cited by the ALJ), which showed that in September 2017, Plaintiff said she had not experienced auditory hallucinations since starting on medication, but did note some rare olfactory hallucinations. [R 26.] The ALJ also noted that at a June 2018 mental health visit, Plaintiff said she was feeling "more joyful" and examination found euthymic mood. *Id*. In addition, Plaintiff's schizophrenia was said to be stable and her anxiety was improved. *Id*. In September 2018, Plaintiff was normally oriented and her mental symptoms were described as well controlled. *Id*. Contrary to Plaintiff's argument, the ALJ is free to – indeed, instructed to – take note of improvement in a plaintiff's conditions. *See* SSR 16-03p ("Important information about symptoms…may include, but is not limited to…change over a period of time (*e.g.*, whether worsening, improving, or static)…"); *see Patricia T. v. Saul*, 2020 WL 2767580, at *4 (N.D. Ill. May 28, 2020) ("Contrary to [plaintiff's] assertion, the ALJ built a logical bridge between the record and that conclusion by pointing to evidence that [plaintiff's] headaches improved with physical therapy and were stable with medication."). The Court does not find the ALJ used these reports of improvement to suggest Plaintiff's reports of mental symptoms were overblown. The Court declines to remand on this

basis.

Plaintiff also complains the ALJ used "false equivalencies" to suggest that "deficits in short term memory were cancelled out by normal long-term memory, and that deficits in auditory memory, attention, and concentration were cancelled out by normal speech." [Dkt. 20, p. 13.] The Court rejects this argument. While the ALJ did note various findings (some in the same sentence as each other), the ALJ never said that one cancelled the other out. The ALJ's consideration of Plaintiff's abilities and limitations does not reflect an unreasonable finding of false equivalence between them, but a reasonable assessment by the ALJ regarding the consistency of Plaintiff's limits across her medical record. The Court will not remand on this basis.

Finally, Plaintiff takes issue with the ALJ's treatment of her speech language capabilities. Plaintiff contends the ALJ "tried to gloss over" Plaintiff's receptive language skills, which, Plaintiff contends, result in severe deficits in her ability to understand instructions. [Dkt. 20, p. 14.] Far from glossing over Plaintiff's language skills, the ALJ addressed them directly. The ALJ noted the evidence showed a history of speech-language difficulties, particularly as a child, but concluded there was little evidence Plaintiff's speech-language impairment had caused significant, ongoing limitations after the alleged disability onset date. [R. 25 (citing R. 384-437, 807-1207).] The ALJ noted Plaintiff stopped receiving speech and language services in February 2004 (8 years prior to the alleged onset date), at which time she was noted to have great communication skills. [*Id.* (citing R. 1039-40).] In addition, at her May 2016 psychological consultative examination, Plaintiff's speech and language functioning were normal. [*Id.* (citing R. 431).] In May 2016, Plaintiff's speech was understandable almost all of the time. [*Id.* (citing R. 391).] Furthermore, the ALJ explicitly noted that Plaintiff's May 2016 speech and language consultative examination revealed moderate impairments with receptive language and only mild impairments with expressive language, pragmatic language, and voice. [*Id.* (citing R. 441).] The ALJ was clearly

aware of Plaintiff's receptive language issues. In addition to the evidence above, the ALJ also noted that while Plaintiff was in special education classes, she did "extraordinarily well" both academically and emotionally and was characterized as a "model student." [R. 26 (citing R. 397).] Lastly, the Court notes it does not appear from the Administrative Hearing transcript that Plaintiff had any difficulties communicating, responding to questions appropriately, or being understood by her counsel, the ALJ, the vocational expert, or the court reporter. [R. 39-60.] Based on this record, the ALJ reasonably concluded that while the available evidence showed a history of speech-language difficulties, particularly as a child, there was little evidence Plaintiff's speech-language impairment caused significant, ongoing limitations after the alleged disability onset date. [R 27 (citing R. 384-437, 807-1207).] The Court does not find the ALJ "glossed over" Plaintiff's language difficulties, and will not remand on this basis.

In sum, the Court finds the ALJ's assessment of Plaintiff's symptoms and accompanying reasoning to be well-supported and adequate to support her conclusions (*i.e.*, supported by substantial evidence). *Barnett*, 381 F.3d at 668. Therefore, the Court declines to remand on the grounds averred by Plaintiff.

### 3.4    The ALJ Properly Considered Plaintiff's Obesity

In her final argument, Plaintiff alleges the ALJ failed to properly consider the effects of Plaintiff's obesity. Again, the Court disagrees.

In her decision, the ALJ found that Plaintiff's obesity was a severe impairment, but that it did not, by itself or in combination with Plaintiff's other impairments, interfere with Plaintiff's ability to work. [R. 22, 25.] The ALJ specifically observed that Plaintiff's obesity was noted in the record, but physical examinations had usually been unremarkable, reflecting normal gait and strength. [R. 25 (citing R. 443-51, 456-614, 766-96, 1324-51).] The ALJ also noted that Plaintiff denied any significant physical problems at the Administrative Hearing, aside from noting that her

feet hurt sometimes but she receives no treatment for them. [R. 25.]

In spite of these observations, Plaintiff contends the ALJ erred in considering her morbid obesity.[6] However, the Seventh Circuit has consistently reiterated that a disability claimant must establish specific limitations affecting his/her ability to work. *See e.g.*, *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (it is plaintiff's "burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (plaintiff "must establish through other evidence an actual disability during the insured period. It is not enough to show that she had received a (particular) diagnosis…"). The Seventh Circuit has even specifically found the same plaintiff's burden to exist when the ailment complained of is obesity. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008). Moreover, as noted in Social Security Ruling 02-1p, the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p, 2002 WL 34686281. A plaintiff must specifically point them out to the ALJ.

Yet here, Plaintiff has "not articulate[d] how her obesity exacerbated her underlying conditions and further limited her functioning – as it was her burden to do." *Hernandez*, 277 F. App'x at 624 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006)). Plaintiff did identify that she was seeing a doctor as a candidate for bariatric surgery [dkt. 20, p. 15.], but this alone does not prove that Plaintiff was unable to work. Plaintiff also identified that her psychotropic medications "appear to exacerbate some of these physical problems" [*Id.*] (without

---

[6]     The phrase "morbid obesity" is not the magic bullet Plaintiff makes it out to be. The Court has discovered no case finding it an error if an ALJ mentions Plaintiff's obesity but neglects to classify it as "morbid obesity." Nor has Plaintiff noted any such cases. Here, the ALJ not only mentioned Plaintiff's obesity, but classified it as a severe impairment and afforded it the analysis required as such. The Court finds the ALJ's omission of the word "morbid" here to be of no consequence, particularly since Plaintiff does not detail any limitations (let alone work-preclusive limitations) stemming from Plaintiff's obesity.

providing more specificity), but side effects from medications, without more, do not establish an inability to work.[7] Neither of these scenarios describes a work-preclusive limitation for Plaintiff. Plaintiff needed to – but did not – identify evidence of the combined effects of her impairment before accusing the ALJ of failing to consider those effects. While obesity may exacerbate a claimant's conditions, there must be evidence it actually does. Here, Plaintiff has identified nothing about her obesity, morbid or not, indicating it warrants restrictions beyond the restriction to the medium exertional level found by the ALJ.

As the Seventh Circuit has noted, when a plaintiff "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, and neither does she explain how her obesity exacerbated her underlying impairments…even if the ALJ had erred in considering how [the claimant's] obesity affects her ability to work, that error would be harmless." *Shumaker v. Colvin*, 632 Fed. App'x 861, 867-68 (7th Cir. 2015) (citations omitted). Here, the Court does not find the ALJ erred in her consideration of Plaintiff's obesity, either singly or in combination with Plaintiff's other impairments. Moreover, such an error would be harmless if it existed, as the record does not contain any allegation of disability or limitations specifically due to obesity. The Court will not remand based on the ALJ's treatment of Plaintiff's obesity.

**4.    CONCLUSION**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence and contain the requisite adequate logical bridges between the evidence and her conclusion. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [dkt. 20] is DENIED and Defendant's motion for summary judgment [dkt. 22]

---

[7]    In fact, the ALJ did explicitly consider this when she noted: "[w]hen [Plaintiff] has experienced exacerbation of her [mental] symptoms, it has often been related to medication adjustments requested to reduce weight gain." [R. 26.]

is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: 6/2/2021**

Susan E. Cox,
United States Magistrate Judge